# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DR. ALAN J. BAUER,                  :
                                    :
                Plaintiff,          :     Civil Action No.: 11-1267 (RC)
                                    :
           v.                  :
                                    :
MAVI MARMARA et al.,                :
                                    :
              Defendants.         :
_____     :

## STATEMENT OF INTEREST OF THE UNITED STATES
## REGARDING THE PLAINTIFF'S STANDING
## TO BRING SUIT UNDER 18 U.S.C. § 962

RONALD C. MACHEN        LANNY A. BREUER
United States Attorney       Assistant Attorney General
District of Columbia

                            JOHN D. BURETTA
                            Deputy Assistant Attorney General

                            VIJAY SHANKER
                            Attorney, U.S. Department of Justice
                            Criminal Division, Appellate Section
                            950 Pennsylvania Ave., NW, Rm. 1264
                            Washington, DC 20530
                            TEL 202.353.0268/FAX 202.305.2121
                            vijay.shanker@usdoj.gov
                            D.C. Bar. No. 468857

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................i

TABLE OF AUTHORITIES .....................................................ii

FACTUAL BACKGROUND.................................................... 1

ARGUMENT ....................................................................... 5

  I.  There Is No Express Private Right Of Action Under 18 U.S.C. § 962...... 6

  II.  No Implied Private Right Of Action Should Be Read
      Into Section 962............................................................... 10

CONCLUSION....................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ..................................................... 6

*American Federation of Government Employees, AFL-CIO v. Rumsfeld*,
  321 F.3d 139 (D.C. Cir. 2003) ...................................................... 5

*Austin v. United States*, 509 U.S. 602 (1993) .................................................... 8

*The Carondelet*, 37 F. 799 (S.D.N.Y. 1889) ...................................................... 8

*The City of Mexico*, 32 F. 105 (S.D. Fla. 1887)................................................. 7

*Gelston v. Hoyt*, 16 U.S. 246 (1818) ............................................................ 14

*Guaranty Trust Co. v. United States,* 304 U.S. 126 (1938)................................... 9

*Hernandez-Avalos v. INS,* 50 F.3d 842 (10th Cir. 1995)..................................... 5

*In re Newport Sav. and Loan Ass'n*, 928 F.2d 472 (1st Cir. 1991) ........................ 9

*In re The Venus*, 180 F. 635 (E.D. La. 1910), *aff'd sub nom.*
  *Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911) (per curiam)................... 4, 7, 13

*Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988) ........................ 1

*The Laurada*, 85 F. 760, 769 (D. Del. 1898), *aff'd*, 98 F. 983
  (3d Cir. 1900), *aff'd*, 183 U.S. 694 (1902)................................................ 10

*Louisiana Landmarks Soc., Inc. v. City of New Orleans*,
  85 F.3d 1119 (5th Cir. 1996) ...................................................... 5

*Mudd v. White*, 309 F.3d 819 (D.C. Cir. 2002)................................................ 5

*Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279 (11th Cir. 2010) ................. 5

*Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911) (per curiam)....................... 4, 9, 14

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal
    Nat. Mortg. Ass'n v. Raines*, 534 F.3d 779 (D.C. Cir. 2008)........................... 10

*Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985).........................7, 10

*Stalley v. Methodist Healthcare*, 517 F.3d 911 (6th Cir. 2008)................ 11, 12, 13

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 52 U.S. 148 (2008)...... 11

*The Three Friends*, 166 U.S. 1 (1897) .......................................................8, 9, 10

*United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19 (1st Cir. 2007) ........12, 13

*United States v. Bajakajian*, 524 U.S. 321 (1998)................................................. 8

*United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936)....................... 9

*United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943)....................... 11, 12, 13

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)...............................................................4, 6, 11, 12, 13

## FEDERAL STATUTES

18 U.S.C. § 960........................................................................................... 10

18 U.S.C. § 962........................................................................................passim

18 U.S.C. § 981(a)(1)..................................................................................... 9

18 U.S.C. § 983(d).......................................................................................... 8

25 U.S.C. § 81............................................................................................... 12

25 U.S.C. § 201............................................................................................. 12

28 U.S.C. § 517.........................................................................................1

35 U.S.C. § 292(b)...................................................................................12

46 U.S.C. § 723........................................................................................12

### MISCELLANEOUS

66 C.J.S. Neutrality Laws § 12, Forfeiture of Vessel (2012) ...........................7

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

Pursuant to the Court's order of June 5, 2012, the United States respectfully submits this Statement of Interest under 28 U.S.C. § 517 regarding plaintiff Dr. Alan J. Bauer's standing to bring this action.[1]  Dr. Bauer has filed suit under 18 U.S.C. § 962 seeking the forfeiture of 14 vessels which, Dr. Bauer alleges, were furnished or fitted out for the purpose of committing hostilities against the state of Israel.   The government submits that Dr. Bauer lacks standing to bring suit.

## FACTUAL BACKGROUND

1.     On July 11, 2011, Dr. Bauer filed a civil complaint under 18 U.S.C. § 962 seeking the forfeiture of 14 vessels.   Complaint (D.1).   Section 962 (known as the "Neutrality Act," *see Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1352 (5th Cir. 1988)) provides as follows:

> Whoever, within the United States, furnishes, fits out, arms, or attempts to furnish, fit out or arm, any vessel, with intent that such vessel shall be employed in the service of any foreign prince, or state, or of any colony, district, or people, to cruise, or commit hostilities against the subjects, citizens, or property of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace; or
>
> Whoever issues or delivers a commission within the United States for any vessel, to the intent that she may be so employed –

---

[1] Pursuant to 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

Shall be fined under this title or imprisoned not more than three years, or both.

Every such vessel, her tackle, apparel, and furniture, together with all materials, arms, ammunition, and stores which may have been procured for the building and equipment thereof, shall be forfeited, one half to the use of the informer and the other half to the use of the United States.

According to the complaint, the terrorist organization Hamas seized power in the Gaza Strip in 2007 and began carrying out rocket and missile attacks against civilian targets in Israel.  Israel thus imposed a naval blockade on the Gaza Strip to limit Hamas's ability to receive material support for the attacks.  In response, according to the complaint, "anti-Israel organizations" in the United States and other countries organized efforts to breach the blockade, to harm Israel's security, and to support Hamas authorities in the Gaza Strip. Complaint ¶¶ 9-11.

The complaint alleges that, as part of that effort, organizations and individuals acting within the United States raised funds which they used to furnish and fit out the defendant vessels to be used by "anti-Israel organizations" to commit hostilities against the state of Israel.  Specifically, according to the complaint, such organizations, including the "Free Gaza Movement" and the "U.S. Boat to Gaza Project," organized efforts to breach the blockade and support Hamas authorities in the Gaza Strip by furnishing and fitting out the vessels for those purposes and sending them to the Gaza

Strip. *Id.* ¶¶ 11-15. The complaint alleges that the efforts and attempts to violate Israel's blockade of the Gaza Strip, to harm Israel's security, and to support Hamas authorities in the Gaza Strip using the defendant vessels constitute cruising and committing hostilities against the citizens and property of Israel, with whom the United States is at peace. *Id.* ¶ 16.

The complaint states that Dr. Bauer, who was injured along with his son in an unrelated bombing attack carried out by Palestinian terrorists in Jerusalem on March 21, 2002, wrote a letter to the Attorney General asserting that the defendant vessels were furnished and fitted out for the purpose of committing hostilities against Israel. *Id.* ¶¶ 4, 5; *see* Complaint Ex. A. Dr. Bauer alleges that the vessels are subject to forfeiture under Section 962, and that, as an "informer" within the meaning of the statute, he is entitled to one half of the proceeds of the forfeiture of the defendant vessels. Complaint ¶¶ 3, 6.

The complaint alleges that this Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1355 and 18 U.S.C. § 962. *Id.* ¶ 7.

2.  On July 14, 2011, the Court (Kollar-Kotelly, D.J.) issued an order requiring Dr. Bauer to show cause why the action should not be dismissed for lack of subject matter jurisdiction due to Dr. Bauer's lack of standing to assert a claim under 18 U.S.C. § 962. Order to Show Cause (D.3). The Court stated

3

that "[t]he Supreme Court has noted that § 962 provides for forfeiture to the informer of a share of vessels privately armed against friendly nations, but it does not expressly authorize suit by the informer" (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000)); that "[t]he Court is aware of no authority holding that an informer has an implied right of action for forfeiture under § 962 without participation by the United States" (citing *In re The Venus*, 180 F. 635 (E.D. La. 1910), *aff'd sub nom. Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911) (per curiam)); and that, "[t]herefore, it appears to the Court that Plaintiff lacks standing to pursue this action." Order to Show Cause.

In his response to the Order to Show Cause, Dr. Bauer argued that Section 962 must be construed to authorize him to pursue the forfeiture because it does not specifically forbid an informer to institute an action and because he is a statutory assignee of half of the United States' potential interest in the defendant vessels. Response to Order to Show Cause (D.7) ("Response") at 3-4. Dr. Bauer asserted that "the plain language of § 962's forfeiture section indicates that the informer enjoys an interest in half the proceeds of the forfeiture regardless of the interests of the United States, and regardless of whether the United States joins in the forfeiture," and that "the informer collects his or her share directly from the forfeiture and need not wait

4

for the United States to seek or obtain a forfeiture." *Id.* at 7.   He also argued

that prudential considerations did not weigh in favor of dismissing the action,

which he called a "*qui tam* action." *Id.* at 8-10.

3.     On June 5, 2012, the Court asked the United States to file a

Statement of Interest providing input regarding Dr. Bauer's standing to bring

suit under Section 962.   Request for Statement of Interest (D.9).

## ARGUMENT

Dr. Bauer lacks standing to bring this action under 18 U.S.C. § 962.

Because Dr. Bauer was not personally injured by the events alleged in his

complaint, he has standing only if the statute confers on him a right to bring

this action.   That is, subsumed in the standing inquiry is the question whether

Section 962 provides a private right of action.   *See Mudd v. White*, 309 F.3d 819,

824 (D.C. Cir. 2002).[2]

---

[2] "The existence of a private right of action is an issue separate and distinct from the issue of standing." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1293 (11th Cir. 2010) (internal quotation marks omitted); *accord Louisiana Landmarks Soc., Inc. v. City of New Orleans*, 85 F.3d 1119, 1122 n.3 (5th Cir. 1996) ("Standing is a concept distinct from the concept of private rights of action.").   But where, as here, a plaintiff's asserted injury arises solely from a statute, the lack of a private right of action under the statute means the plaintiff lacks standing.   *See American Federation of Government Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 142-43 (D.C. Cir. 2003) (affirming dismissal for lack of standing because the statute provided no private right of action); *Hernandez-Avalos v. INS*, 50 F.3d 842, 846 (10th Cir. 1995) ("The 'private right of action' argument, by contrast, typically is made in *non*-administrative litigation, where the zone-of-interests test is simply a restatement of the general rule against third-party standing.   Faced with a statute whose enforcement is (arguably) entrusted solely to the government and which thus contemplates only the government as a plaintiff, the would-be private plaintiff argues for implication of a private right of action – i.e., recognition of a supplemental private enforcement mechanism – which

A private individual has no authority to bring a civil action under Section 962. The statute contains no express private right of action, and no such right of action should be implied. Moreover, even assuming an implied right of action, the government's participation would be required, and the government here declines to participate in Dr. Bauer's suit. The complaint should therefore be dismissed.

## I.    There Is No Express Private Right Of Action Under 18 U.S.C. § 962.

The starting point for determining whether a statute provides a private right of action is the statutory text. *See Alexander v. Sandoval*, 532 U.S. 275, 285-87 (2001). Section 962 provides that a vessel that has been furnished or fit out to cruise or commit hostilities against a foreign state with whom the United States is at peace "[s]hall be forfeited, one half to the use of the informer and the other half to the use of the United States." 18 U.S.C. § 962. It nowhere, however, authorizes a private forfeiture action by the informer. *See Vermont Agency of Natural Resources*, 529 U.S. at 769 n.1 (noting that Section 962 provides for forfeiture to the informer of a share of vessels privately armed against friendly nations, but does not expressly authorize suit by the informer). The statute provides only that *if* the government successfully prosecutes a forfeiture action, the informer is entitled to half of the forfeited property. *See*

will allow him to proceed where he would otherwise be barred by the rule against third-party standing.") (internal quotation marks and citations omitted).

6

*The Venus*, 180 F. at 635 (the plaintiff's "rights do not arise from either tort or contract, but merely from the grace of the government in allowing [the] informers one-half of the penalty recovered"); *The City of Mexico*, 32 F. 105, 106 (S.D. Fla. 1887) ("*If* the officer seize upon the information, th[e] act invests an inchoate right in the informer, who has given the information upon which the seizure was made, which is consummated by a condemnation.") (internal quotation marks omitted) (emphasis added). *See also* 66 C.J.S. Neutrality Laws § 12, Forfeiture of Vessel (2012) ("The informer acquires no vested right and may not prosecute enforcement of the seizure in his own right.").[3]

That Section 962 does not provide for a private right of action is not surprising. The statute is part of the criminal title of the United States Code, and therefore it implicates the government's prosecutorial discretion. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 210 (D.C. Cir. 1985) ("Private rights of action are extremely unlikely to be created by statutory language customarily found in criminal statutes.") (internal quotation marks omitted). To be sure, in *The Three Friends*, 166 U.S. 1 (1897), the Supreme Court held that a forfeiture action under the predecessor to Section 962 does not depend

---

[3] For the same reason, it is questionable whether Dr. Bauer is an "informer" within the meaning of Section 962. "An 'informer,' in the legal as well as the ordinary sense of the term, . . . is he who gives the information which leads directly to the seizure and condemnation . . . ." *The City of Mexico*, 32 F. at 106. Where there has been no seizure or condemnation, there is no informer.

7

on a criminal conviction under the statute: "The suit is a civil suit in rem for the condemnation of the vessel only, and is not a criminal prosecution. The two proceedings are wholly independent, and pursued in different courts, and the result in each might be different." *Id*. at 49-50. That the forfeiture aspect of Section 962 is civil in nature, however, does not mean that a private individual can bring a forfeiture action under the statute.[4]   Nearly all forfeitures, whether civil or criminal, are punitive. *See Austin v. United States*, 509 U.S. 602, 614 (1993) ("statutory *in rem* forfeiture imposes punishment," even though forfeiture can also serve remedial purposes).[5]   Indeed, the *Three Friends* Court, despite noting that the forfeiture provision in the predecessor to Section 962 was civil and separate from any criminal prosecution, stated that the purpose of the statute was "'to *punish* certain offenses against the United States by fines, imprisonment, *and forfeitures*.'"   166 U.S. at 52 (quoting 13 Op. Attys. Gen. U.S. 178) (emphasis added).   *See also The Carondelet*, 37 F. 799, 801 (S.D.N.Y. 1889) (the predecessor to Section 962 "is a highly criminal and

---

[4] In *Three Friends*, the vessel at issue was seized by a government agent, not a private individual. *See* 166 U.S. at 2.

[5]   *But see United States v. Bajakajian*, 524 U.S. 321, 329-32 (1998) (recognizing that "traditional civil *in rem* forfeitures" are nonpunitive).   The forfeiture provision in Section 962 is not a nonpunitive "traditional civil *in rem* forfeiture" because, among other things, it cannot be imposed upon innocent owners.   18 U.S.C. § 983(d), (i) (subjecting forfeiture under "any civil forfeiture statute" to the innocent owner defense and defining "civil forfeiture statute" to include all but a few enumerated civil forfeiture statutes).   *See Bajakajian*, 524 U.S. at 330-32 (observing that one hallmark of nonpunitive traditional civil in rem forfeiture is that the innocence of the property owner is irrelevant).

penal [statute]; it is not to be enlarged by construction beyond the fair import of its terms"). Punitive forfeiture, whether civil or criminal, is a power reserved to the government; the government is not aware of any private right to forfeit property under federal law. *See In re Newport Sav. and Loan Ass'n*, 928 F.2d 472, 478 (1st Cir. 1991) (noting that a "forfeiture action" is one "in which *the United States* seeks to obtain property owned by a private citizen") (emphasis added); 18 U.S.C. § 981(a)(1) ("The following property is subject to [civil] forfeiture *to the United States*.") (emphasis added).

In addition, Section 962 implicates foreign relations, a sphere uniquely within the province of the federal government. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936); *Olivier v. Hyland*, 186 F. 843, 843 (5th Cir. 1911) (per curiam) ("[t]he enforcement of the neutrality laws of the United States is of necessity under the control of the government of the United States"). A decision by the United States to bring an action for forfeiture of vessels under the Neutrality Act would involve serious foreign policy considerations based on circumstances known only within the United States government, including the potential for foreign conflict. *Cf. The Three Friends*, 166 U.S. at 63 ("it belongs to the political department to determine when belligerency shall be recognized, and its action must be accepted according to the terms and intention expressed"); *Guaranty Trust Co. v. United States*, 304

9

U.S. 126, 137 (1938).  Congress would not have given a private individual the right to assert an action under a statute whose purpose is to prevent the United States from being "compromised in its relations with friendly powers."  *The Laurada*, 85 F. 760, 769 (D. Del. 1898), *aff'd*, 98 F. 983 (3d Cir. 1900), *aff'd*, 183 U.S. 694 (1902).  *See Sanchez-Espinoza*, 770 F.2d at 210 ("It would be doubly difficult to find a private damage action within the Neutrality Act, since this would have the practical effect of eliminating prosecutorial discretion in an area where the normal desirability of such discretion is vastly augmented by the broad leeway traditionally accorded the Executive in matters of foreign affairs.") (interpreting 18 U.S.C. § 960, a similar Neutrality Act statute).

In sum, Section 962 contains no express right of action for the informer. Its forfeiture provision permits the government to forfeit property involved in the offense and requires that any proceeds be shared with the informer.  The statute implicates the government's prosecutorial and foreign relations functions and for that reason, as is clear from its text, reserves to the government the decision whether to pursue forfeiture.

## II.    No Implied Private Right Of Action Should Be Read Into Section 962.

Nor should Section 962 be read to imply a private right of action.  *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal Nat. Mortg. Ass'n v. Raines*, 534 F.3d 779, 793 (D.C. Cir. 2008) ("courts today rarely create

implied private rights of action; courts generally deem it Congress's prerogative to make that decision"); *see also Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 164 (2008) ("it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one").  For the reasons stated above, Section 962 reveals no legislative intent to create a private right of action, and it would be inconsistent with the nature and purposes of the statute to imply such a right.

Dr. Bauer relies on dictum in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 n.4 (1943), repeated in *Vermont Agency of Natural Resources*, 529 U.S. at 777 n.7, that "[s]tatutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize the informer to sue."  But the Supreme Court in both *Hess* and *Vermont Agency of Natural Resources* was simply noting that, historically, some *qui tam* statutes did not provide an express cause of action but were nonetheless construed to authorize informers to sue.[6]  *See Hess*, 317 U.S. at 541-42 & n.4; *Vermont Agency of Natural Resources*, 529 U.S. at 776-77 & n.7.  The Court did not suggest that a statute providing for a reward to an

---

[6] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'"  *Vermont Agency of Natural Resources*, 529 U.S. at 769 n.1.  "A *qui tam* statute allows a private person to bring an action in the name of the United States, that will benefit both the person and the government."  *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916-17 (6th Cir. 2008).

informer is automatically a *qui tam* statute under which the informer can bring an action. Indeed, the Court indicated that Section 962 is *not* such a statute. *See Vermont Agency of Natural Resources*, 529 U.S. at 769 n.1 (stating that Section 962 does not expressly authorize suit by an informer); *id.* (stating that, other than the False Claims Act, only "[t]hree other *qui tam* statutes . . . remain on the books": 25 U.S.C. § 81, 25 U.S.C. § 201, and 35 U.S.C. § 292(b)). *See also Stalley v. Methodist Healthcare*, 517 F.3d 911, 917 n.3 (6th Cir. 2008) ("the Court's footnote [in *Vermont Agency of Natural Resources*] also included, *by way of comparison to* the *qui tam* statutes, two statutes that provide for forfeiture to an informer of a share of property, but *do not authorize suit by the informer, viz.*, 18 U.S.C. § 962 and 46 U.S.C. § 723") (emphasis added); *id.* at 917 (stating that "the right to bring a *qui tam* action is entirely created by statute" and that "only in dictum has the Court indicated that the right to bring a *qui tam* action might be inferred from a statute's terms rather than explicitly conferred").[7]

Although *qui tam* statutes "typically permit [relators] to share – with the government – in the monetary recovery of the lawsuit," *United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 24 (1st Cir. 2007), the fact that a statute

---

[7] Although the Supreme Court's dictum in *Hess* stated that some statutes, including the predecessor to Section 962, historically provided for "actions by a common informer," 317 U.S. at 542 n.4, the Court did not address whether Section 962 should still be construed in that manner, and the Court's later comments in *Vermont Agency of Natural Resources* suggest that it should not. 529 U.S. at 769 n.1.

provides for sharing of a monetary recovery does not alone transform the statute into a *qui tam* statute allowing an individual to sue on the government's behalf.  *See Stalley*, 517 F.3d at 918-19 (*qui tam* statutes, like the False Claims Act, generally contain (1) a provision permitting a private plaintiff to bring an action on behalf of the United States, (2) procedural safeguards by which the government retains some control of the action and can determine the extent to which it will participate, and (3) a sharing provision); *United Seniors*, 500 F.3d at 24-25 (same).  Section 962 does not share the typical features of a *qui tam* statute and should not be construed as authorizing an action on behalf of the government.  *See Vermont Agency of Natural Resources*, 529 U.S. at 769 n.1 (not including Section 962 among the only four *qui tam* statutes on the books).

In any event, even assuming Section 962 is some sort of variant of a *qui tam* statute allowing an individual to sue on behalf of the government, courts have held that a plaintiff who has seized property or filed an action under the statute cannot maintain the action without the participation of the government.  In *The Venus*, the court stated that, even assuming the plaintiff had the right to bring a forfeiture action under the predecessor to Section 962, the fact that the government intervened and declined to adopt the action required dismissal.  180 F. at 635.  *See id.* ("[t]he United States having intervened, any action taken by her is paramount" and "[w]hen she moved to dismiss the libel, it was

13

necessarily the end of the case").   In *Olivier*, the Fifth Circuit affirmed the district court's decision in *The Venus*.   186 F. at 843.   The court held unequivocally that

> [w]here a seizure is made on complaint of an informer for violation of section 11, Penal Laws of the United States, and the United States, through its proper representatives, intervenes, disavows, and declines to ratify the seizure, as in the instant case, the informer can have no such inchoate or other interest as will permit the further prosecution of the case in his behalf.

*Id.* *Cf. Gelston v. Hoyt*, 16 U.S. 246, 310 (1818) ("At common law, any person may at his peril, seize for a forfeiture to the government; and *if the government adopt his seizure*, and the property is condemned, he will be completely justified.") (emphasis added).   The government is not aware of any case in which a private plaintiff pursued forfeiture under Section 962 without the government's participation.

Dr. Bauer argues (Response at 13-14) that, because the courts did not dismiss the action on standing grounds, *Olivier* and *The Venus* suggest that a plaintiff has authority to initiate a forfeiture action unless and until the government intervenes and disavows the action.  He is incorrect.  Although the government demonstrated its refusal to participate by affirmatively intervening, the *Olivier* and *The Venus* courts did not hold that such action was necessary.

14

They simply made clear that a private plaintiff cannot seek to forfeit property under Section 962 without the participation of the government.

*   *   *

Section 962 provides for the division of forfeited property between the government and an informer if the government brings a successful forfeiture action under the statute.  It nowhere permits the informer to bring a private cause of action.  Nor should any such right be implied in Section 962, which is not a *qui tam* statute allowing a plaintiff to file an action on the government's behalf.  And even assuming the section is considered a type of *qui tam* statute allowing an action by a private party on the government's behalf, the action cannot be maintained without the government's participation.  Here, the government has elected not to participate in or ratify Dr. Bauer's action.

## CONCLUSION

For the reasons stated herein, this action should be dismissed for lack of standing.

Respectfully submitted,

RONALD C. MACHEN
United States Attorney
District of Columbia

LANNY A. BREUER
Assistant Attorney General

JOHN D. BURETTA
Deputy Assistant Attorney General

s/ *Vijay Shanker*
VIJAY SHANKER
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., NW, Rm. 1264
Washington, DC 20530
TEL 202.353.0268/FAX 202.305.2121
vijay.shanker@usdoj.gov
D.C. Bar No. 468857

September 21, 2012