UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- X

DR. ALAN J. BAUER,

Plaintiff,

-against-

THE MAVI MARMARA, *et al.*,

Defendants.

Docket No:

11-CV-1267(RC)

------------------------------------------------------------- X

**PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST
OF THE UNITED STATES REGARDING THE PLAINTIFF'S STANDING
TO BRING SUIT UNDER 18 U.S.C. § 962**

**INTRODUCTION**

"Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action *are construed to authorize him to sue.*"

> *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541, n. 4 (1943); *Vermont Agency for Natural Resources v. United States, ex rel Stevens*, 529 U.S. 765, 777 n.7 (2000) (*emphasis supplied*).

Plaintiff, Dr. Alan Bauer, filed this action pursuant to 18 U.S.C. § 962, which broadly speaking, provides for the *in rem* forfeiture of any vessel that is furnished, armed, or fitted out "for hostile use against a foreign country that is at peace with the United States." The statute includes a civil *in rem* forfeiture provision that

provides: "every such vessel…*shall be* forfeited, one half to the use of the informer and the other half to the use of the United States." 18 U.S.C. § 962 (*emphasis supplied*). The statute does not specifically either authorize or forbid informers to sue. Dr. Bauer initiated this action seeking the forfeiture of fourteen vessels that were furnished or fitted out for hostile use against Israel, a country at peace with the United States.

On July 14, 2011, the Court (Kollar-Kotelly, *J.*) entered an Order to Show Cause in which it observed that § 962 does not expressly authorize suit by the informer. Docket Entry 3. The Court stated that it was not aware of authority providing an informer with a private right of action. The Court then ordered the plaintiff to show cause why the action should not be dismissed for lack of subject matter jurisdiction due to lack of standing.

On September 12, 2011, Dr. Bauer filed his response to the Order to Show Cause. Dr. Bauer cited extensive authority in support of his standing. On June 5, 2012, the Court invited the Government, pursuant to 28 U.S.C. § 517 to file a Statement of Interest addressing the question of Dr. Bauer's standing. *See* (DE 9*). On September 21, 2012, the Government filed a Statement of Interest of the United States Regarding the Plaintiff's Standing to Bring Suit Under 18 U.S.C. § 962 (the "Statement of Interest"). The Government puts forward several arguments against a finding that Dr. Bauer has standing to bring the instant action. As discussed below, all of these arguments are without merit.

---

* Parenthetical references to "DE" refer to the docket entries in this case.

## DISCUSSION

### A.    The Court should disregard the Government's straw man argument that § 962 does not expressly authorize informers to initiate forfeiture actions

The government dedicates half of its argument (Statement of Interest, Section I at 6-10) attempting to prove the obvious—that § 962 does not *expressly* provide a private right of action. Whether the statute includes an express right to sue was never an issue in this case. Dr. Bauer never argued that § 962 expressly provides him with a private right of action. Instead, Dr. Bauer cited several early cases under the Neutrality Act in which the courts implicitly understood that informers enjoyed standing to initiate forfeitures, (See Response to Order to Show Cause at 2-3, 11-12). Dr. Bauer also demonstrated that the rationale supporting holding in *Vermont Agency for Natural Resources v. United States, ex rel Stevens*, 529 U.S. 765 (2000) that a False Claims Act plaintiff has Article III standing applies equally to Dr. Bauer's standing in the instant Neutrality Act case. *Id. at 6-8*. Finally, supported by at least two Supreme Court decisions, Dr. Bauer demonstrated that "statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action *are construed* to authorize him to sue." (*See* Response to Order to Show Cause at 10-11, *citing United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541, n. 4 (1943); *Vermont Agency for Natural Resources v. United States, ex rel Stevens*, 529 U.S. 765, 777 n.7 (2000) (*emphasis supplied*)). Nowhere did Dr. Bauer argue that the Neutrality Act expressly provided him with a right of action. Thus, the Government's gratuitous discussion of this straw-man argument should be disregarded.

**B.**     **Section 962 is construed to authorize informers to initiate civil *in rem* forfeiture actions**

The second half of the Government's argument (Statement of Interest, Section II at 10-15) addresses the question of whether § 962 should be counted among the statutes that the Supreme Court has said are construed to authorize informers to initiate forfeiture actions. The Government accepts the validity of the *Marcus/Stevens* rule that "statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action ***are construed*** to authorize him to sue." The Government argues however, that the Supreme Court "did not suggest that a statute providing for a reward to an informer is automatically a *qui tam* statute under which the informer can bring an action." (Statement of Interest at 11-12).

This question of whether § 962 is called a "*qui tam*" statute is beside the point. Contrary to the Government's assertion, the Supreme Court explicitly and unequivocally stated that statutes *providing for rewards* to informers are construed to authorize the informer to sue unless the stature specifically provides otherwise. *Vermont Agency for Natural Resources v. United States, ex rel Stevens*, 529 U.S. 765, 777 n.7. It did not restrict its statement to *qui tam* statutes.

Indeed, the *Stevens* Court's statement of the rule (in footnote 7) can only be understood to apply to statutes like § 962, that provide informers with a bounty but no express cause of action. The text to which footnote 7 is appended reads:

> …immediately after the framing, the First Congress enacted a considerable number of informer statutes. Like their English counterparts, some of them provided both a bounty

and an express cause of action; others provided a bounty
only.[7]

*Stevens*, 529 U.S. at 777. Then footnote 7 discusses several statutes enacted by the First

Congress that provided informers with a bounty but no express right to sue[1]. At the end

of that footnote, and in obvious reference to the enumerated statues that provided a

bounty but no express cause of action, the Court quoted the rule from *Marcus*, that

"statutes providing for a reward to informers which do not specifically either authorize

or forbid the informer to institute the action are construed to authorize him to sue." *Id.*

at n.7. This rule, read in context, applies specifically to statutes like § 962 without regard

to whether they are otherwise deemed *qui tam* statutes.

Similarly, the Supreme Court's discussion in *Marcus* can only be read to

indicates that this rule of construction applies to § 962. *Marcus*, 317 U.S. 537, 541, n. 4.

Like the Court would do later in *Stevens*, the *Marcus* Court acknowledged that

"[s]tatutes providing for actions by a common informer, who himself has no interest

whatever in the controversy other than that given by statute, have been in existence for

hundreds of years in England, and in this country ever since the foundation of our

Government." *Id., citing Marvin v. Trout*, 199 U.S. 212, 225 (1905). The first statute cited

as an example of these types of informer statutes was the predecessor to § 962. *Marcus,*

*317 U.S. at 541, n. 4.* Immediately thereafter, in the same footnote, the Court stated the

rule that these statutes are to be construed as authorizing suit by the informers. *See id.* In

---

[1] Notably, several of the statutes listed in footnote 7 were criminal statutes
that included bounties for informers. Nonetheless, the Court instructed that they were
to be construed to authorize the informers to sue. (*See* Section D, below).

its Statement of Interest, the Government acknowledges that under *Marcus*, the predecessor to § 962 included an *implied* right of action. (Statement of Interest at 12, n. 7). Yet the Government inexplicably asserts that for some unstated reason § 962 should not be construed in the same way.

Also remarkably, the Government argues that the *Marcus/Stevens* Rule merely indicates that "some *qui tam* statutes did not provide an express cause of action but were nonetheless construed to authorize informers to sue." (Statement of Interest at 11). The Government states no principled rule by which one could distinguish between what the Government calls the "*qui tam*" statutes listed in Stevens' footnote 7, which the Government concedes *are* construed to authorize informers to sue, from § 962, to which the Government claims the Rule does not apply.

Stevens *may* indicate that § 962 is not a *qui tam* statute. If that is so, it is only because § 962 does not explicitly authorize informers to sue. And that is precisely why § 962 fits perfectly within the *Marcus/Stevens* rule of construction. Moreover, that is why the Rule is necessary in the first instance—no rule implying a cause of action is necessary where the statute explicitly creates one. Whether § 962 should be labeled a *qui tam* statute is irrelevant; under *Marcus* and *Stevens* it must be construed to authorize informers to sue.

## C.    The Government cannot retroactively deprive Dr. Bauer of standing by merely declining to join in his action

The Government's second argument against finding an *implied* grant of standing under § 962 is based upon the Government's abstention from the action.

(Statement of Interest at 13). The Government argues that it may decline to participate in the action, and thereby, *somehow* retroactively deprive the informer of standing. None of the cases cited by the government go as far as the government suggests. In both *Olivier v. Hyland*, 186 F. 843 (5th Cir. 1905), and *The Venus*, 180 F. 635 (E.D. La. 1910)[2], the Government affirmatively intervened and moved to dismiss the actions on the merits; it did not simply file a Statement of Interest arguing against standing. Nor could it have. The Government has no special authority and is entitled to no deference to decide whether a plaintiff in a given action has standing to sue.

True, some *qui tam* statutes expressly provide the Government with the right to move to dismiss a relator's action. *See e.g.* 31 U.S.C. § 3130(c)(2)(A) (False Claims Act). However, even under the False Claims Act, the Government's power is limited, and the relator must receive notice and an opportunity to be heard on the motion. Contrast § 962, which does not expressly empower the Government to dismiss an informer's forfeiture action. Furthermore, the Government here is moving to dismiss for lack of standing alone. (Statement of Interest at 16). We are aware of no authority that empowers the Government to retroactively deprive a party of standing that has been granted by statute. Neither *Olivier* nor *The Venus* supports the Government's position.

Furthermore, in dismissing the informer's case, the district court in *The Venus* reasoned that because the statute under which the ship was forfeited was criminal, any action could have only been in the name of the United States. 180 F. 635.

---

[2] According to Lexis and Sheppard's searches, neither of these century-old decisions has ever been cited by another published decision.

Similarly, in *Olivier*, the court relied on the fact that the forfeiture action was ultimately based upon a criminal violation. Both courts ignored the Supreme Court holding in *The Three Friends*, 166 U.S. 1 (1897), that a forfeiture action under the predecessor to § 962 was *civil* in nature despite the fact that it arose out of a criminal violation. *The Three Friends* held: "The suit is a civil suit in rem for the condemnation of the vessel only, and is not a criminal prosecution. The two proceedings are wholly independent, and pursued in different courts, and the result in each might be different." *Id*. at 49-50. To the extent the lower courts in *Olivier* and *The Venus* contradict the Supreme Court's holding in *The Three Friends*, they must be disregarded.

**D.      Allowing an informer to sue to enforce the forfeiture provision of § 962 will not interfere with the Government's prosecutorial discretion**

Within its argument that § 962 contains no *express* right of action, the Government buries two separate arguments that have no apparent relevance to the question of whether the right of action in § 962 is express or implied. These arguments will be discussed in turn. Neither of them has any force with respect to the question of Dr. Bauer's standing.

First, the Government argues that because § 962 is found within "the criminal title of the United States Code," it "implicates the government's prosecutorial discretion" and therefore cannot include a private right of action. (Statement of Interest at 7). The Government attempts to distract the Court from the narrow issue presented with its sweeping argument that any punitive statute or any statute appearing in the "criminal title" of the United States Code cannot include a private right of action. This

proposition is patently false. Countless provisions of the Criminal Code allow private individuals to sue for redress. *See e.g.*, 18 U.S.C. § 1964 (civil RICO); 18 U.S.C. §§ 2252A(f), 2255 (private right of action provided under child pornography laws) 18 U.S.C. § 2724 (private right of action for disclosure of personal information contained in motor vehicle records), to name but a few. The Government's argument is also belied by cases specifically discussing § 962 and other informer statutes. Notably, several of the statutes listed in *Stevens*, 529 U.S. at 777, n. 7, as well as § 962's predecessor, which was discussed in *Marcus, 317 U.S. at 541, n. 4*, were criminal statutes that included bounties for informers but no express right of action. Nonetheless, the Supreme Court instructed that they were to be construed to authorize the informers to sue.

Thus, as discussed above, in *The Three Friends*, the Supreme Court bifurcated the civil and criminal provisions of the predecessor to § 962. 166 U.S. at 49-50. Holding that the civil and criminal proceedings "are wholly independent, and pursued in different courts, and the result in each might be different," (*id*.) the Court demonstrated that any civil forfeiture need have no influence at all on any criminal prosecution. Additionally, at least some of the informer statutes discussed by the *Stevens* Court in footnote 7 were designed to enforce criminal violations through the imposition of civil fines. And, it was explicitly in reference to these statutes that the Court quoted the *Marcus* rule that any informer statutes that provided a reward for the informers would be construed to authorize them to initiate an enforcement action.

### E.     The Government has no special right to interpret laws that may implicate foreign policy

The Government also argues that § 962 does not expressly authorize private informers to sue *because* the statute implicates foreign relations. It appears that the Government is suggesting that the Court should defer to the Government's desired interpretation of the statute simply because the Government claims that the statute implicates foreign relations. Granting the Government such broad power to interpret a statute would violate basic separation of powers principles.

To be sure, when questions of foreign relations arise, "evaluation of the facts by the Executive, like Congress's assessment, is entitled to [judicial] deference." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2727 (2010). However, even if courts defer to the executive's evaluation of *facts*, they may not defer to the executive's interpretation of the law. Supreme Court precedents "make clear that concerns of national security and foreign relations do not warrant abdication of the judicial role." *Id.* Thus, the Government is off the mark when it cites *The Three Friends*, 166 U.S. 1, 63, for the proposition that § 962 does not authorize private informers to sue. (*See* Statement of Interest at 9). That case merely says a court should defer to the executive's *factual* determination of whether conduct should be deemed belligerency; *The Three Friends* in no way suggests that federal courts should defer to executive interpretations of informer statutes that might implicate foreign policy.

## <u>CONCLUSION</u>

The Government's arguments against standing disregard and distort unequivocal Supreme Court interpretations of informer statutes similar to § 962. The *Marcus* and *Stevens* decisions could not more clearly state that § 962 should be construed to provide a private right of action for informers like Dr. Bauer. And, basic separation of powers principles prohibit the Court from deferring to the Government's forced interpretation of the statute, no matter how expedient that interpretation may or may not be. Finally, *The Three Friends* ruling establishes that the civil in rem provision of § 962 operates without regard to the Government's conduct of any criminal prosecution. Thus, any prosecutorial discretion the Government may wield under the criminal provisions of the statue does not extend to the rights to the civil in rem action assigned by statute to informers. The Court should discharge its Order to Show Cause and allow this action to proceed without further delay.

Dated:   Brooklyn, New York
         November 8, 2012

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC

By:    /s/ Robert J. Tolchin
       Robert J. Tolchin
       Bar No. NY0088

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627

ASHER PERLIN, ATTORNEY AT LAW
111 N.E. First Street, Suite 378
Miami Florida 3132
(954) 302-3026

## <u>CERTIFICATION</u>

I hereby certify that on November 8, 2012, true copies of this Response were sent

via ECF to the following counsel:


Vijay Shanker
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., NW, Rm. 1264
Washington, DC 20530
vijay.shanker@usdoj.gov




/s/  Robert J. Tolchin_____