# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DR. ALAN J. BAUER,          :
                            :
    Plaintiff,          :     Civil Action No.: 11-1267 (RC)
                            :
  v.                        :
                            :
MAVI MARMARA et al.,        :
                            :
    Defendants.         :
_____:

## SUPPLEMENTAL STATEMENT OF INTEREST OF THE UNITED STATES REGARDING THE PLAINTIFF'S STANDING TO BRING SUIT UNDER 18 U.S.C. § 962

RONALD C. MACHEN
United States Attorney
District of Columbia

LANNY A. BREUER
Assistant Attorney General

JOHN D. BURETTA
Deputy Assistant Attorney General

VIJAY SHANKER
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., NW, Rm. 1264
Washington, DC 20530
TEL 202.353.0268/FAX 202.305.2121
vijay.shanker@usdoj.gov
D.C. Bar No. 468857

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................i

TABLE OF AUTHORITIES .................................................................................ii

I.     Section 962 Does Not Contain An Implied Private Right Of Action Simply Because It Provides For A Reward To An Informer. .................. 2

II.    Reading Section 962 To Require The Participation Of The United States Would Not "Retroactively Deprive" Dr. Bauer Of Standing. ................. 8

CONCLUSION.................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adams v. Woods*, 2 Cranch 336 (1805) ............................................................... 4

*Austin v. United States*, 509 U.S. 602 (1993) ...................................................... 6

*The Carondelet*, 37 F. 799 (S.D.N.Y. 1889) ........................................................ 6

*The City of Mexico*, 32 F. 105 (S.D. Fla. 1887) ................................................... 2

*The Confiscation Cases*, 74 U.S. 454 (1868) ....................................................... 3

*Gelston v. Hoyt*, 16 U.S. 246 (1818) .................................................................... 8

*In re Newport Sav. and Loan Ass'n*, 928 F.2d 472 (1st Cir. 1991) ....................... 9

*In re The Venus*, 180 F. 635 (E.D. La. 1910), *aff'd sub nom.*
   *Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911) (per curiam) ......................... 2, 8

*Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911) (per curiam) ............................. 7, 8

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal*
   *Nat. Mortg. Ass'n v. Raines*, 534 F.3d 779 (D.C. Cir. 2008) ............................ 4

*Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985) .......................... 5, 7

*Smith v. Reagan*, 844 F.2d 195 (4th Cir. 1988) .................................................... 7

*Stalley v. Methodist Healthcare*, 517 F.3d 911 (6th Cir. 2008) ............................ 5

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 52 U.S. 148 (2008) ........ 5

*The Three Friends*, 166 U.S. 1 (1897) ......................................................... 4, 5, 6

*United States v. Chhun*, 513 F. Supp. 2d 1179 (C.D. Cal. 2007) ..................... 4, 8

*United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936) ..................... 7

*United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943) .................................... 3

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ................................................................................... 3, 4

## FEDERAL STATUTES

18 U.S.C. § 962 ........................................................................................... passim

18 U.S.C. § 1964 ................................................................................................ 6

18 U.S.C. § 2252A(f) .......................................................................................... 6

18 U.S.C. § 2255 ................................................................................................ 6

18 U.S.C. § 2724 ................................................................................................ 6

28 U.S.C. § 517 .................................................................................................. 1

## MISCELLANEOUS

13 Op. Attys. Gen. U.S. 178 ............................................................................ 4, 6

66 C.J.S. Neutrality Laws § 12, Forfeiture of Vessel (2012) ............................. 3

# SUPPLEMENTAL STATEMENT OF INTEREST
# OF THE UNITED STATES OF AMERICA

Pursuant to 28 U.S.C. § 517, the United States respectfully submits this Supplemental Statement of Interest regarding plaintiff Dr. Alan J. Bauer's standing to bring this action.[1] Dr. Bauer has filed suit under 18 U.S.C. § 962 seeking the forfeiture of 14 vessels which, Dr. Bauer alleges, were furnished or fitted out for the purpose of committing hostilities against the state of Israel. On September 21, 2012, in response to the Court's request of June 5, 2012, the government filed a Statement of Interest contending that Dr. Bauer lacks standing to bring suit. Dr. Bauer filed a response ("Response to SOI") on November 8, 2012.

In its Statement of Interest, the government demonstrated that a private individual has no authority to bring a civil action under Section 962. The statute contains no express private right of action, and no such right of action should be inferred. Moreover, the government established, even assuming an implied right of action, the government's participation in the action would be required, and the government has declined to participate in Dr. Bauer's suit.

---

[1] Pursuant to 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1

In response, Dr. Bauer argues that Section 962 must be read to authorize a private action because it provides for a reward to an informer. He also asserts that the fact that Section 962 is a punitive statute and implicates foreign relations has no bearing on whether it provides a private right action. And he claims that the government's decision not to participate in the action is of no consequence because the government cannot "retroactively deprive" him of standing. Dr. Bauer's arguments are without merit.

I. **Section 962 Does Not Contain An Implied Private Right Of Action Simply Because It Provides For A Reward To An Informer.**

Dr. Bauer argues (Response to SOI at 4-6) that because Section 962 provides for the division of any forfeited property between the government and the informer, it must be read to implicitly authorize a private action by the informer. But the mere fact that the statute provides for a reward to an informer if the government uses information in the course of forfeiting property does not mean that the informer can bring a private action. The cases make clear that an informer under Section 962 holds only an inchoate interest, which vests only if the government pursues and prevails in a forfeiture action. *See In re The Venus*, 180 F. 635, 635 (E.D. La. 1910) (the plaintiff's "rights do not arise from either tort or contract, but merely from the grace of the government in allowing [the] informers one-half of the penalty recovered"); *The City of*

*Mexico*, 32 F. 105, 106 (S.D. Fla. 1887) ("If the officer seize upon the information, th[e] act invests an inchoate right in the informer, who has given the information upon which the seizure was made, which is consummated by a condemnation.") (internal quotation marks omitted). *See also* 66 C.J.S. Neutrality Laws § 12, Forfeiture of Vessel (2012) ("The informer acquires no vested right and may not prosecute enforcement of the seizure in his own right."). *Cf. The Confiscation Cases*, 74 U.S. 454, 462 (1868) (under a statute providing for the condemnation of vessels used in an insurrection and the sharing of the property with an informer, the informer "cannot institute the suit, nor move for process, nor join in the pleadings, nor take testimony, nor except to the ruling of the court, nor sue out a writ of error, or take an appeal"; "the interest of the informer is conditional, and under the decisions of this Court it continues to be so until the money is paid over, as required by law").

Dr. Bauer continues to rely on language in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 n.4 (1943), that "[s]tatutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize the informer to sue." The Supreme Court itself called that language dictum in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 777 n.7 (2000). And it is dictum that is especially unpersuasive: the Court in *Marcus* cited a single case

3

for the proposition that legislative silence is construed in favor of allowing informer suits, and that case was one in which the statute *expressly authorized* such suits. *See Adams v. Woods*, 2 Cranch 336, 336 (1805) (statute providing that "one moiety [of the penalty] [shall accrue] to the use of the United States, and the other moiety thereof to the use of him or her *who shall sue for and prosecute the same*") (emphasis added).

    Cutting against the dubious dictum in *Hess* is the well-established principle that "courts today rarely create implied private rights of action; courts generally deem it Congress's prerogative to make that decision." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal Nat. Mortg. Ass'n v. Raines*, 534 F.3d 779, 793 (D.C. Cir. 2008). Courts should be especially reluctant to infer private rights of action where, as here, the result would be an assignment of the government's cause of action. *See The Three Friends*, 166 U.S. 1, 52 (1897) (the purpose of the predecessor to Section 962 was "'to punish certain offenses *against the United States*'") (quoting 13 Op. Attys. Gen. U.S. 178) (emphasis added); *Vermont Agency of Natural Resources*, 529 U.S. at 773 (the *qui tam* mechanism is an assignment of the government's cause of action); *United States v. Chhun*, 513 F. Supp. 2d 1179, 1184 (C.D. Cal. 2007) ("The Neutrality Act provid[es] the government with a means to avoid an international incident by allowing for prosecution of those individuals [who

4

initiate provocative acts against friendly nations]"). *See also Stalley v. Methodist Healthcare*, 517 F.3d 911, 917 (6th Cir. 2008) (stating that "the right to bring a *qui tam* action is entirely created by statute" and that "only in dictum has the Court indicated that the right to bring a *qui tam* action might be inferred from a statute's terms rather than explicitly conferred").

In any event, even assuming that, as a general matter, the right to institute a private action on behalf of the government can be implicit, no such right should be inferred here. The nature and purposes of Section 962, which implicate both prosecutorial discretion and foreign relations, militate against inferring a right of action by the informer. *See Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 164 (2008) ("it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one"); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 210 (D.C. Cir. 1985) ("Private rights of action are extremely unlikely to be created by statutory language customarily found in criminal statutes.") (internal quotation marks omitted).

Dr. Bauer asserts that Section 962 does not implicate prosecutorial discretion because the Supreme Court in *The Three Friends*, 166 U.S. at 49-50, said that that the forfeiture aspect of Section 962 is civil in nature. But Section 962 is still undeniably a punitive statute providing for forfeiture as a sanction.

*See id.* at 52 (the purpose of the predecessor to Section 962 was "'to punish certain offenses against the United States by fines, imprisonment, and forfeitures'") (quoting 13 Op. Attys. Gen. U.S. 178); *The Carondelet*, 37 F. 799, 801 (S.D.N.Y. 1889) (the predecessor to Section 962 was a "highly criminal and penal" statute); *see also Austin v. United States*, 509 U.S. 602, 614 (1993) ("statutory *in rem* forfeiture imposes punishment"). It would be highly unusual, if not unprecedented, to read a statute to implicitly allow a private citizen to pursue punitive forfeiture and seize private property.

That certain statutes found in Title 18 of the United States Code contain provisions allowing private individuals to sue for redress, *see* Response to SOI at 9, does not undermine the government's point. The statutes cited by Dr. Bauer are all expressly civil provisions allowing victims of crime to sue for recompense. *See* 18 U.S.C. §§ 1964, 2252A(f), 2255, 2724. Section 962 is not such a statute; the offenses it outlines are against the United States, not Dr. Bauer, and it provides for forfeiture, not civil damages.

Dr. Bauer also misunderstands why deference to the Executive in foreign relations militates against recognizing a private right of action under Section 962. Contrary to Dr. Bauer's mischaracterization (Response to SOI at 8), the United States does not argue that "the Court should defer to the Government's desired interpretation of the statute simply because the Government claims

6

that the statute implicates foreign relations." To be clear, the issue is not the Executive Branch's interpretation of Section 962. The issue is one of separation of powers and whether recognition of a private right of action under Section 962 would intrude upon the discretion of the political branches in formulating and executing foreign policy.

On this issue, the Fourth Circuit has recognized that, in the context of legislation, "tread[ing] on matters of foreign policy which have long been recognized as the exclusive province of the political branches, we must be especially certain of congressional intent before inferring a private cause of action." *Smith v. Reagan*, 844 F.2d 195, 201 (4th Cir. 1988). Specifically, in the context of neutrality laws, "[i]t would be doubly difficult to find a private damage action within the Neutrality Act [18 U.S.C. § 960] since this would have the practical effect of eliminating prosecutorial discretion in an area where the normal desirability of such discretion is vastly augmented by the broad leeway traditionally accorded the Executive in matters of foreign affairs." *Sanchez-Espinoza*, 770 F.2d at 210 (citing *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936); *Olivier v. Hyland*, 186 F. 843, 843 (5th Cir. 1911) (per curiam) ("[t]he enforcement of the neutrality laws of the United States is of necessity under the control of the government of the United States").

The purpose of the Neutrality Act is "to prevent the interference of private individuals in the government's foreign policy decisions." *Chhun*, 513 F. Supp. 2d at 1184.  Recognizing an implied private right of action under Section 962 would thwart the very purpose of the Neutrality Act by enabling private individuals to seek judicial pronouncements on sensitive questions of war and peace.

II.  **Reading Section 962 To Require The Participation Of The United States Would Not "Retroactively Deprive" Dr. Bauer Of Standing.**

Dr. Bauer asserts (Response at 6-8) that the government's alternative argument – that, even assuming Section 962 provides for private suits on behalf of the government, a private action cannot be maintained without the participation of the government – advances an interpretation under which the government could "retroactively deprive the informer of standing."  But if Section 962 is, consistent with the government's alternative position, a variant of a *qui tam* statute allowing an individual to sue on behalf of the government but only if the government participates in the suit, *see The Venus*, 180 F. at 635; *Olivier*, 186 F. at 843; *Gelston v. Hoyt*, 16 U.S. 246, 310 (1818), then Dr. Bauer has no standing of which he could be deprived.  The mere fact that he has filed a complaint does not confer him with standing.

8

Indeed, Dr. Bauer does not explain how he could maintain a forfeiture action, seize the subject vessels, and share half of the property with the government *without* the government's participation or ratification.  *See In re Newport Sav. and Loan Ass'n*, 928 F.2d 472, 478 (1st Cir. 1991) (noting that a "forfeiture action" is one "in which *the United States* seeks to obtain property owned by a private citizen") (emphasis added).

## CONCLUSION

For the reasons stated herein and in the government's Statement of Interest, this action should be dismissed for lack of standing.

Respectfully submitted,

RONALD C. MACHEN  
United States Attorney  
District of Columbia

LANNY A. BREUER  
Assistant Attorney General

JOHN D. BURETTA  
Deputy Assistant Attorney General

_s/ Vijay Shanker_  
VIJAY SHANKER  
Attorney, U.S. Department of Justice  
Criminal Division, Appellate Section  
950 Pennsylvania Ave., NW, Rm. 1264  
Washington, DC 20530  
TEL 202.353.0268/FAX 202.305.2121  
vijay.shanker@usdoj.gov  
D.C. Bar No. 468857

December 21, 2012